### JIM LARUE v. THE STATE.

No. 22167. Delivered June 10, 1942.

The opinion states the case.

*J. F. Mangum,* of Crockett, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of two years in the penitentiary on a charge of cattle theft.

The indictment alleges that the appellant, Jim Larue, and Kid Larue, acting together, unlawfully and fraudulently took one head of cattle from Albert Smith without his consent. The appellant was separately tried, and after the jury's verdict, filed a motion for a new trial in which he states that the evidence failed to show that he had any knowledge of the unlawful action of Kid Larue, who was shown by the evidence to be his brother; and that the evidence further fails to show that he aided or encouraged Kid Larue in committing the offense, or that he knew that he was committing the offense of theft.

The record is before us without bills of exception.

The only question presented for our consideration is whether or not the evidence is sufficient to show that appellant was present at the time the cattle were taken, that he knew the unlawful intent and purpose of his brother, Kid Larue, in taking them, and that he aided him in doing so. Briefly summarized, the statement of facts shows that the Larue brothers, (colored boys) had worked on the farm of Albert Smith part of the time for a great many years; that on the occasion of the theft Mr. Smith was in West Texas. Kid Larue was working for Smith but both he and appellant lived away. That night, the two told Otis Hawthorne, who lived on the place, that they were going duck hunting and wanted him to go with them, which he declined to do. A short while thereafter, he saw the two Larue brothers going to the loading pen about 150 yards from his house. He saw them there together with another party, and he could hear the loading of the cattle into a pick-up with a steel bed. It was dark and they drove away without turning on their lights. He pursued them and gave alarm but soon lost the direction in which they went. The sheriff was called and he made an investigation. Upon these facts he went to the home of the appellant and Kid Larue that night, and after discussing the matter with them, took them into custody. The evidence further shows that the two Larue brothers, together with another party, who was the owner or in possession of the pick-up, drove some distance away and sold the three calves which they had loaded to two other parties from whom the sheriff recovered them that night. There is no dispute in the evidence about the theft of the cattle. It appears perfectly clear that appellant was present and either saw them loaded or helped load them. He went with them, saw them sold and delivered and check received, and returned to

306

his home in company with Kid Larue, who, it appears from the record, was the instigator of the crime. Appellant was present with Kid Larue and the sheriff that night and he either heard or engaged in the conversation disclosing the whereabouts of the cattle to the sheriff. They both told him where the cattle were and went with him to recover them. The sheriff testified further: "They both said they got them out there at Mr. Albert Smith's ranch, east of town, four miles."

Appellant testified in his own behalf and said that he did not help to load the cattle, but admitted his presence. He said he got none of the money but the evidence indicates that the check received by his brother for the cattle had not been cashed at the time of their arrest. He admits that he had worked for Mr. Smith frequently around the place and does not deny that he knew the ownership of the cattle that were being taken. From all the circumstances of the case and in the absence of any objection to the admissibility of the testimony, the court was justified in submitting the case to the jury and they were warranted in returning a verdict of guilty.

The judgment of the trial court is affirmed.